# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LONESOME PINE HOSPITAL**<br>1910 Holton Avenue<br>Big Stone Gap, VA  24219 | ) ) ) ) |
| **FAYETTE MEDICAL CENTER**<br>1653 Temple Avenue<br>Fayette, AL  35555 | ) ) ) ) |
| **DCH REGIONAL MEDICAL CENTER**<br>809 University Boulevard<br>Tuscaloosa, AL  35401 | ) ) ) ) |
| **DCH REGIONAL MEDICAL CENTER**<br>2700 Hospital Drive<br>Northport, AL  35476 | ) ) ) Case No.<br>) |
| **GREAT RIVER MEDICAL CENTER**<br>1520 North Division Street<br>Blytheville, AR  72315 | ) ) ) ) |
| **HOSPITAL OF SAINT RAPHAEL**<br>1450 Chapel Street<br>New Haven, CT  06511 | ) ) ) ) |
| **LAWRENCE & MEMORIAL HOSPITAL**<br>365 Montauk Avenue, 7th Floor<br>Stamford, CT  06320 | ) ) ) ) |
| **BRIDGEPORT HOSPITAL**<br>267 Grant Street<br>Bridgeport, CT  06610 | ) ) ) ) |
| **YALE NEW HAVEN HOSPITAL**<br>1 Church Street<br>New Haven, CT  06519 | ) ) ) ) |
| **WILLIAM W. BACKUS HOSPITAL**<br>326 Washington Street<br>Norwich, CT  06360 | ) ) ) ) |

1

PLAINTIFF'S COMPLAINT FOR JUDICIAL REVIEW OF ADVERSE AGENCY DECISION

**HARTFORD HOSPITAL**                                  )
80 Seymour Street                                      )
Hartford, CT  06102                                    )
                                                       )
**ST. VINCENT'S MEDICAL CENTER**                       )
2800 Main Street                                       )
Bridgeport, CT  06606                                  )
                                                       )
**THE HOSPITAL OF CENTRAL CONNECTICUT**                )
389 John Downey Street                                 )
New Britain, CT  06050                                 )
                                                       )
**BAPTIST HEALTH MEDICAL CENTER-**                     )
**JACKSONVILLE**                                       )
800 Prudential Drive                                   )
Jacksonville, FL  32207                                )
                                                       )
**BAPTIST MEDICAL CENTER - BEACHES**                   )
1350 13th Avenue South                                 )
Jacksonville Beach, FL  32250                          )
                                                       )
**BAPTIST MEDICAL CENTER - NASSAU**                    )
1250 South 18th Street                                 )
Fernandina Beach, FL  32034                            )
                                                       )
**GARRETT REGIONAL MEDICAL CENTER**                    )
251 North Fourth Street                                )
Oakland, MD  21550                                     )
                                                       )
**BAPTIST MEMORIAL HOSPITAL UNION COUNTY**             )
830 South Gloster Street                               )
Tupelo, MS  38801                                      )
                                                       )
**BAPTIST MEMORIAL HOSPITAL NORTH**                    )
**MISSISSIPPI**                                        )
2301 South Lamar                                       )
Oxford, MS  38655                                      )
                                                       )
**BAPTIST MEMORIAL HOSPITAL BOONEVILLE**               )
100 Hospital Street                                    )
Booneville, MS  38829                                  )
                                                       )
**BAPTIST MEMORIAL HOSPITAL GOLDEN**                   )
**TRIANGLE**                                           )
2520 Fifth Street North                                )
Columbus, MS  39705                                    )

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION

**BAPTIST MEMORIAL HOSPITAL DESOTO**  )
7601 Southcrest Parkway  )
Southaven, MS  38671  )
 )
**CAROLINAS MEDICAL CENTER-NORTHEAST**  )
920 Church Street North  )
Concord, NC  28025  )
 )
**NOVANT HEALTH FORSYTH MEDICAL CENTER**  )
3333 Silas Creek Parkway  )
Winston-Salem, NC  27103  )
 )
**NOVANT HEALTH ROWAN MEDICAL CENTER**  )
612 Mocksville Avenue  )
Salisbury, NC  28144  )
 )
**ATRIUM HEALTH CLEVELAND**  )
201 East Grover Street  )
Shelby, NC  28150  )
 )
**NOVANT HEALTH FRANKLIN MEDICAL CENTER**  )
100 Hospital Drive  )
Louisburg, NC  27549  )
 )
**NOVANT HEALTH PRESBYTERIAN MEDICAL**  )
**CENTER**  )
200 Hawthorne Lane  )
Charlotte, NC  28204  )
 )
**WILKES REGIONAL MEDICAL CENTER**  )
1370 West D Street  )
North Wilkesboro, NC  28659  )
 )
**COLUMBUS REGIONAL HEALTHCARE SYSTEM**  )
500 Jefferson Street  )
Whiteville, NC  28472  )
 )
**ATRIUM HEALTH ANSON**  )
500 Morven Road  )
Wadesboro, NC  28170  )
 )
**NOVANT HEALTH THOMASVILLE**  )
**MEDICAL CENTER**  )
207 Old Lexington Road  )
Thomasville, NC  27360  )

**CAROLINAS MEDICAL CENTER/BEHAVIORAL**                         )
**HEALTH**                                                      )
1000 Blythe Boulevard                                           )
Charlotte, NC  28203                                            )
                                                                )
**STANLY REGIONAL MEDICAL CENTER**                             )
301 Yadkin Street                                               )
Albemarle, NC  28002                                            )
                                                                )
**ATRIUM HEALTH UNION**                                         )
600 Hospital Drive                                              )
Monroe, NC  28112                                               )
                                                                )
**ATRIUM HEALTH LINCOLN**                                       )
200 Gamble Drive                                                )
Lincolnton, NC  28093                                           )
                                                                )
**NOVANT HEALTH MEDICAL PARK HOSPITAL**                        )
1950 South Hawthorne Road                                       )
Winston Salem, NC  27103                                        )
                                                                )
**PRESBYTERIAN ORTHOPAEDIC HOSPITAL, LLC**                     )
1901 Randolph Road                                              )
Charlotte, NC  28207                                            )
                                                                )
**NOVANT HEALTH BRUNSWICK MEDICAL CENTER**                     )
1 Medical Center Drive                                          )
Supply, NC  28462                                               )
                                                                )
**ATRIUM HEALTH UNIVERSITY CITY**                              )
8800 North Tryon Street                                         )
Charlotte, NC  28262                                            )
                                                                )
**NOVANT HEALTH MATTHEWS MEDICAL CENTER**                      )
1500 Matthews Township Parkway                                  )
Matthews, NC  28105                                             )
                                                                )
**NOVANT HEALTH HUNTERSVILLE MEDICAL**                         )
**CENTER**                                                      )
10030 Gilead Road                                               )
Huntersville, NC  28078                                         )
                                                                )
**UNIONTOWN HOSPITAL**                                          )
500 West Berkeley Street                                        )
Uniontown, PA  15401                                            )

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION

**CHEROKEE MEDICAL CENTER**  )
1530 North Limestone Street  )
Gaffney, SC  29340  )
  )
**WELLMONT BRISTOL REGIONAL MEDICAL CENTER** )
1 Medical Park Boulevard  )
Bristol, TN  37620  )
  )
**BAPTIST MEMORIAL HOSPITAL-CARROLL COUNTY** )
631 R.B. Wilson Drive  )
Huntingdon, TN  38344  )
  )
**WELLMONT HOLSTON VALLEY MEDICAL CENTER** )
130 Ravine Road  )
Kingsport, TN  37660  )
  )
**SYCAMORE SHOALS HOSPITAL**  )
1501 West Elk Avenue  )
Elizabethton, TN  37643  )
  )
**HAWKINS COUNTY MEMORIAL HOSPITAL**  )
851 Locust Street  )
Rogersville, TN  37857  )
  )
**BAPTIST MEMORIAL HOSPITAL**  )
6019 Walnut Grove Road  )
Memphis, TN  38120  )
  )
**JOHNSON CITY MEDICAL CENTER**  )
400 North State of Franklin Road  )
Johnson City, TN  37604-6094  )
  )
**BAPTIST MEMORIAL HOSPITAL UNION CITY**  )
Russell and Bishop Streets  )
Union City, TN  38261  )
  )
**BAPTIST MEMORIAL HOSPITAL TIPTON**  )
1995 Highway 51 South  )
Covington, TN  38019  )
  )
**INDIAN PATH COMMUNITY HOSPITAL**  )
2000 Brookside Drive  )
Kingsport, TN  37660  )

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION

**FRANKLIN WOODS COMMUNITY HOSPITAL**                        )
401 Princeton Road                                          )
Johnson City, TN  37601                                     )
                                                            )
**NORTON COMMUNITY HOSPITAL**                               )
100 15th Street Northwest                                   )
Norton, VA  24273                                           )
                                                            )
**RUSSELL COUNTY HOSPITAL**                                 )
Carroll and Tate Streets                                    )
Lebanon, VA  24266                                          )
                                                            )
**LEE REGIONAL MEDICAL CENTER**                             )
1800 Combs Road                                             )
Pennington Gap, VA  24277                                   )
                                                            )
**MOUNTAIN VIEW REGIONAL MC NORTON**                        )
310 Third Street Northeast                                  )
Norton, VA  24273                                           )
                                                            )
**SMYTH COUNTY COMMUNITY HOSPITAL**                         )
565 Radio Hill Road                                         )
Marion, VA  24354                                           )
                                                            )
**NOVANT PRINCE WILLIAM MEDICAL CENTER**                    )
8700 Sudley Road                                            )
Manassas, VA  20110                                         )
                                                            )
**JOHNSTON MEMORIAL HOSPITAL**                              )
351 Court Street Northeast                                  )
Abingdon, VA  24210                                         )
                                                            )
**WEST VIRGINIA UNIVERSITY HOSPITALS, INC.**                )
1 Medical Center Drive                                      )
Morgantown, WV  26506                                       )
                                                            )
**UNITED HOSPITAL CENTER**                                  )
3 Hospital Plaza                                            )
Clarksburg, WV  26301                                       )
                                                            )
**BERKELEY MEDICAL CENTER**                                 )
2500 Hospital Drive                                         )
Martinsburg, WV  25401                                      )

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION

**REYNOLDS MEMORIAL HOSPITAL**    )
800 Wheeling Avenue       )
Glen Dale, WV  26038       )
                 )

**THOMAS MEMORIAL HOSPITAL**    )
4605 MacCorkle Avenue  Southwest   )
South Charlston, WV  25309     )
                 )

**ST. FRANCIS HOSPITAL**      )
333 Laidley Street        )
Charleston, WV 25301       )
                 )

**ST. JOSEPH'S HOSPITAL**     )
1824 Murdoch Avenue       )
Parkersburg, WV  26101      )
                 )

**PRINCETON COMMUNITY HOSPITAL**  )
122 Twelfth Street        )
Princeton, WV  24740       )
                 )

**ALECTO HEALTHCARE SERVICES FAIRMONT LLC** )
1325 Locust Avenue       )
Fairmont, WV  26554       )
                 )

**WHEELING HOSPITAL**      )
1 Medical Park         )
Wheeling, WV  26003       )
                 )

**CAMDEN CLARK MEDICAL CENTER**   )
800 Garfield Avenue       )
Parkersburg, WV  26101      )
                 )

**WETZEL COUNTY HOSPITAL**    )
3 East Benjamin Drive       )
New Martinsville, WV  26155     )
                 )

**SUMMERSVILLE REGIONAL MEDICAL CENTER** )
400 Fairview Heights Road      )
Summersville, WV  26651      )
                 )

       Plaintiffs     )

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION

<table>
<tr><td>v.</td><td>)</td></tr>
</table>

v.                                                    )
                                                      )
**ROBERT F. KENNEDY, JR.,**                           )
In his Official Capacity as Secretary, U.S.           )
Department of Health & Human Services                 )
200 Independence Avenue, SW                           )
Washington, D.C. 20201                                )
                                                      )
              Defendant                               )
_____         )

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT

## JURISDICTION AND VENUE

1.    This is a civil action brought to obtain judicial review of a final decision rendered by the Provider Reimbursement Review Board ("PRRB" or the "Board"), acting as a component of the United States Department of Health and Human Services ("HHS"). The determination for which judicial review is hereby sought are PRRB appeals case numbers as referenced herein.

2.    This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

3.    This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1361. Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e).

4.    Further, this Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. §1331, and 28 U.S.C. §1391(e) because:

      (a)    Each Provider filed cost report(s) (for various FYE's, *infra.*) as required by 42 U.S.C. §1395oo(a);

      (b)    Providers were dissatisfied with its fiscal intermediary's final determination, "...as

to the amount of total program reimbursement due the provider... for the period covered by such report," as required by 42 U.S.C. §1395oo(a)(2);

(c)     The amount in controversy for each provider exceeds $10,000, as required by 42 U.S.C. §1395oo(a)(3);

(d)     Each Provider timely filed an appeal(s) with the PRRB pursuant to 42 U.S.C. §1395oo(a)(3);

(e)     The Board effectively dismissed each Provider's appeal(s) by notifying each Provider on May 19, 2025 that its appeal(s) had been dismissed;

(f)     This civil action is filed within sixty (60) days of the date that each Provider was notified by the PRRB, in writing that its appeal was dismissed as evidenced by its letter dated May 19, 2025. (**Exhibit A**).

5.     Plaintiffs have exhausted all administrative remedies under federal law.

### **PARTIES**

6.     Each Plaintiff herein (hereinafter, "Plaintiffs," "Providers" or "Plaintiff Providers") is an acute care, in-patient healthcare facility that serves a disproportionate share of low-income patients. At all relevant times, each Plaintiff Provider had a Medicare provider agreement with the Secretary of Health and Human Services and was eligible to participate in the Medicare program. This case is comprised of one hundred and ninety-five (195) PRRB cases, each such appeal setting forth the same issues for fiscal years ranging from 1988 to 2023. A full listing of each group appeal by name and case number is found at pages eight (8) through sixteen (16) of **Exhibit A**.

7.     Moreover, each Plaintiff was assigned to one or more of the 195 group appeals filed with the PRRB. Attached hereto as **Exhibits B1 through B8** are Model Form G "Schedule of Providers"

wherein each hospital member of each of the aforementioned group appeals is listed by its name, Medicare provider number, appeal period (i.e., fiscal years at issue) and amount in controversy.

8.      Defendant, ROBERT F. KENNEDY, JR., Secretary of the Department of Health and Human Services ("Secretary"), or his predecessors in office, is the federal officer responsible for the administration of the Medicare program. Defendant Kennedy is sued in his official capacity.

9.      As set forth more fully below, Plaintiffs object to the dismissal of each of its appeals by the PRRB as arbitrary, capricious and a violation of the rightful and allowing claims of Plaintiffs. Moreover, and through its actions, the Board demonstrated a clear showing of its bad faith exercise of its discretion by dismissing each of Plaintiffs' 195 group appeals.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

10.    Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 291, as amended by 42 U.S.C. §§1395 et. seq. ("the Medicare program"), establishes a program of medical benefits for persons aged 65 or older, and also for persons under age 65 who are disabled. The Centers for Medicare and Medicaid Services "CMS") formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

11.    The Medicare program was established to provide health insurance to the age and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare & Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

12.     Medicare reimburses the operating costs of short-term acute care hospital inpatient services primarily through the hospital Inpatient Prospective Payment System (IPPS). 42 U.S.C. §1395ww(d). The IPPS statute contains a number of provisions that adjust reimbursements based on Provider-specific factors. *See* 42 U.S.C. §1395ww(d)(5). This case involves the Provider-specific disproportionate share hospital (DSH) adjustment, which requires the Secretary to provide increased IPPS reimbursement to providers that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

13.     Whether a Provider qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the Provider's "disproportionate patient percentage" (DPP). 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the so-called "Medicare Fraction" and Medicaid Fraction," for a Provider's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). Providers whose DSH percentages meet certain thresholds receive an adjustment which results in increased IPPS payments for inpatient hospital services. 42 U.S.C. §1395ww(d)(5)(F)(ii).

14.     The first Fraction's numerator is the number of a provider's inpatient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income (SSI) benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. 42 U.S.C. § 1395ww(d)(5)(F)((vi)(I). This case involves this first fraction, which is hereinafter referred to as the SSI fraction, or the Medicare Fraction.

15.     The second fraction's numerator is the number of Provider patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title 19 of the Social Security Act, 42 U.S.C. §1396-1 et seq., for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the Provider's inpatient days for such period. *Id*.

The second fraction is frequently referred to as the Medicaid Fraction.

16.    The Statute provides that a provider's DPP shall be determined according to the provider's cost reporting period. 42 U.S.C. 1395ww(d)(5)(F)(vi) ("in this subparagraph, the term 'disproportionate patient percentage' means, with respect to a cost reporting period of a hospital . . . . "). Contrary to the Statute, and for administrative convenience, the Secretary determines a provider's DPP based on the Federal Fiscal Year, but, in recognition of a provider's statutory right, allows a provider to request that it DPP be redetermined based on the provider's cost reporting period. Such a request is known as a request for "realignment." A realignment determination is supposed to involve only a change in time period. The Secretary is not permitted to change the underlying substantive standards used in processing the provider's original DPP, regardless of whether such change would be beneficial or detrimental to the provider.

17.    The DSH program was enacted by Congress in the Consolidated Omnibus Budget Reconciliation Act of 1985 and was made effective beginning with discharges on or after May 1, 1986. Pub. L. No. 99272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

18.    The Secretary implemented the DSH program through the publication of an interim final rule on May 6, 1986. 51 *Fed. Reg.* 16,772 (May 6, 1986). In the May 6, 1986 final rule, the Secretary decreed that only Medicare beneficiaries who are "recipients" of SSI, i.e., only those Medicare beneficiaries who have actually received payment, in a given month will have their inpatient hospital stay days counted in the numerator of the Medicare Fraction for that month. *Id.* at 16,777. In the August 16, 2010 final rule, the Secretary maintained that "our policy has always been to include only Medicare beneficiaries who are entitled to receive SSI benefits in the numerator of the SSI fraction." 75 *Fed. Reg.* 50042, at 50280 n.19 (Aug. 16, 2010). The Secretary's policy is that

only Medicare beneficiaries who are paid SSI cash benefits for a given month are "entitled to receive SSI benefits" for purposes of including the inpatient days associated with such beneficiaries in the numerator of the SSI fraction (a/k/a Medicare Fraction). The Secretary does not consider beneficiaries who received non-cash SSI benefits for a particular month to be "entitled to receive SSI benefits." And as explained below, the Secretary's policy is to omit the inpatient days of certain Medicare beneficiaries who: (1) were entitled to be paid SSI for the month(s) of their hospital stay; and (2) at the time of a data match between SSA and CMS, were known by SSA to be entitled to SSI payment for such month(s); but (3) had not actually received payment for such month(s) by the time the data match was performed.

19.    The Social Security Administration (SSA) administers the SSI program; therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data.

20.    To enable CMS to calculate the SSI Fraction, SSA sends CMS an annual "eligibility file" that includes information on all SSI recipients whom SSA has coded with one of three payment status codes: C01 (current pay), M01 (forced pay), and M02 (forced due). Although SSA has dozens of payment status codes, CMS's policy is that only C01, M01, and M02 indicate SSI entitlement for purposes of the numerator of the SSI Fraction. *See* 75 *Fed. Reg.* at 50,042, 50,280 (Aug. 16, 2010). Therefore, at CMS' request or direction, only those individuals with one of the three above referenced payment status codes are listed on the "eligibility file."

21.    SSA does not include payment status codes in the SSI eligibility file but does include monthly indicators denoting which month(s) each person received SSI payments. *See id.* at 50,276; *see also* 51 *Fed. Reg.* 31,454, 31,459 (Sept. 3, 1986) (stating that the SSI file "lists all SSI recipients for a 3-year period and denotes the months during that period in which the recipient was eligible for SSI benefits").

22.    CMS then computes the SSI fraction by matching individuals appearing in the SSA's eligibility file with its own Medicare inpatient data to identify a patient's entitlement to SSI benefits. *Pomona Valley Hosp. Med. Ctr. v. Azar*, No. CV 18-2763 (ABJ), 2020 WL 5816486, at *2 (D.D.C. Sept. 30, 2020) (citing 75 *Fed. Reg.* at 50,281). In other words, "CMS identifies the individuals appearing in both two data sets to determine the number of patients, and the inpatient days for those patients at each hospital, for the applicable fiscal year to calculate the hospital's SSI numerator." *Id*.

23.    The data match between SSA and CMS for any given Federal fiscal year is conducted approximately 15 months after the end of that fiscal year. If, at the time the data match is performed, a Medicare beneficiary was paid SSI cash benefits for a month covered by the data match, any inpatient hospital days associated with such beneficiary will be counted in the numerator of the Medicare Fraction. For example, if Medicare Beneficiary is an inpatient in Hospital (a Medicare certified short-term acute care hospital) from April 29 -May 6, 2022 and, by the time the SSA eligibility file is constructed for that year, was paid SSI for April but not for May, the days April 29 - 30 would be counted in the numerator of the Medicare Fraction, and the days May 1 -6 would not be counted.

24.    After the SSA-CMS data match is performed, CMS does not make adjustments to the Medicare Fraction based upon subsequent, retroactive corrections to the eligibility status of a Medicare beneficiary. Thus, for example, if Medicare Beneficiary filed an application for SSI based on disability on January 1, 2023 and had an inpatient stay in July 2023, but was not, at the time of her stay, adjudicated eligible for SSI, Medicare Beneficiary would not appear on the SSA eligibility tape, and thus the days associated with her July 2023 stay would not be counted in the numerator of Hospital's Medicare Fraction. Moreover, if, six months after the data match for Fiscal Year 2023 was performed, Medicare Beneficiary was awarded SSI based on disability retroactive to January 1, 2023,

the days associated with Medicare Beneficiary's July 2023 stay nevertheless would not be added to the numerator of Hospital's Medicare Fraction. In this example, at the time the data match was performed, neither SSA nor CMS knew that Medicare Beneficiary would subsequently be awarded SSI based on disability.

25.  However, in contrast to the example given in the previous paragraph, there are situations in which (a) a Medicare beneficiary does not receive SSI payment for a particular month, (2) is entitled to SSI payment for that month, and, at the time of the data match, is known by SSA to be so entitled, but (3) inpatient days associated with such individual nevertheless are not counted. For example, if, for a given month, an individual does not have a bank account or is considered by SSA to need a representative payee, but no payee has yet been designated, or SSA does not have a valid address for such an individual, SSA will not make payment to that individual for that month. If the administrative reason for not making payment is not resolved by the time the SSI eligibility file is constructed, the inpatient days associated with such beneficiary will not be included in the numerator of the Medicare Fraction because CMS requests or directs SSA to include only individuals with payment status codes C01, M01, or M02.

26.  SSA's Programs Operating Manual System (POMS) is sub-regulatory guidance published by and used by SSA to implement the SSI program. Section SI 02301.201of the POMS is entitled "Description of SSI Post-eligibility (PE) Events." It states in the Introduction portion that "[t]he term 'eligible' in this subchapter means that a recipient meets all eligibility requirements for part or all of a past or current month(s)." Section SI 02301.201B.2. is entitled "Stop Payment." It explains that "[a] stop payment is an interruption in payment. It is not a loss of eligibility. Payments may be reinstated for past or current month(s) on a stop pay record regardless of the period in non-pay." Section SI 02301.201B.2. specifically mentions the situation in which an SSI eligible individual

needs a representative payee, but the SSA field office has not appointed one as a "stop payment."

27.   Under the Secretary's policy not all individuals who are entitled to SSI have their inpatient days included in the Medicare Fraction during the month(s) of their hospital stay, either because they are entitled to SSI but were not entitled to SSI cash payments during such month(s), or were entitled to SSI cash payments but were not paid SSI cash payments for such month(s).

28.   CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as Medicare Administrative Contractors (hereinafter, the "MAC"). MACs determine payment amounts due to the providers under Medicare law and regulations. 42 U.S.C. § 1395h, 42 C.F.R. §§413.20(b) and 413.24(b). Although the MAC calculates the DPP, CMS computes the SSI fraction.

29.   At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The MAC reviews the cost report, determines the total amount of Medicare reimbursement due to the provider and issues the provider a Notice of Program Reimbursement (NPR).

## CMS FINAL RULE-1739-F

30.   On June 9, 2023, the Secretary issued a final rule, CMS-1739-F, a/k/a the "Part C Days Retroactive Final Rule. 88 *Fed. Reg.* 37,772. In this final rule CMS finalized its proposal to adopt retroactively for all periods prior to October 1, 2013, the counting of Part C Days in the denominator of the Medicare Fraction component of the DPP.

31.   The Part C Days Retroactive Final Rule is without legal authority under the Secretary's limited authority to engage in retroactive rulemaking. *See* 42 U.S.C. § 1395ff(e). It also impermissibly conflicts with the pre-October 1. 2013 regulations at 42 C.F.R. § 412.106, which place only "covered" Medicare days in the denominator of the Medicare Fraction, is also arbitrary and

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION

capricious, and is not a logical outgrowth of the proposed rule which sought to limit the retroactive period to 2004.

## CMS TRANSMITTALS 12747 AND 12785

32.   CMS issued Transmittal 12747 (Change Request 13413) on July 26, 2024. It states that with the issuance of the Part C Days retroactive final rule (CMS-1739-F), "the processing of realignment requests for cost reporting periods starting before FY 2014 will resume. For realignment requests for cost reporting periods starting before FY 2014, CMS will calculate cost reporting period SSI ratios for all periods, for all hospitals, and post those ratios to the CMS DSH website (https://www.cms.gov/medicare/medicare-fee-for-servicepayment/acuteinpatientpps/dsh) under the header 'CMS 1739-F SSI Ratios." Like the Federal fiscal year SSI ratios, these cost reporting period SSI ratios for cost reporting periods starting before October 1, 2013, have been determined pursuant to CMS-1739-F using the data available to CMS."

33.   Thus, CMS illegally included Part C days in the denominator of the Medicare Fraction in processing requests for realignment. CMS's action is illegal because, in processing requests for realignment, it had and has no authority to change the substantive standards that were used in the original determination of the provider's DPP, and because it has no authority to place Part C days in the denominator of the Medicare Fraction retroactively.

34.   CMS Transmittal 12747 was "rescinded and replaced" by **Transmittal 12785**, published on August 13, 2024. The policy announced in Transmittal 12747 was carried over into Transmittal 12785. **Transmittal 12785** states that all information in Transmittal 12747 "remains the same" in Transmittal 12785. Plaintiffs allege that Transmittal 12785 is invalid on its face, should be enjoined and should not be applied to the calculations. In this matter, Plaintiffs are appealing from the publication of Medicare/SSI Fractions on CMS website on August 26, 2024 that was done pursuant

to **Transmittal 12785**.

## THE RELEVANT MEDICARE APPEALS PROCESS

35.  At the close of its fiscal year, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. Under the Medicare program, each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement (NPR), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital is also required to make a claim, or alternatively self-disallow, for any adjustment to its basic IPPS payment adjustment, such as the DSH adjustment. 42 C.F.R. § 413.24(j).

36.  If a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in the NPR, and the hospital satisfies the amount in controversy requirements, the hospital has a right to obtain a hearing before the Board by filing an appeal within 180 days of receiving its NPR (or any revised NPR). 42 U.S.C. §1395oo(a); 42 C.F.R. § 405.1835(a). In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the Board is authorized to decide questions relating to its jurisdiction and procedure. *See* 42 U.S.C. §1395oo. Further, the Board is required to "affirm, modify, or reverse . . . *and* to make any other revisions on matters covered by such cost report[.]" *See* 42 U.S.C. § 1395oo(d) (emphasis added). That is, the Board cannot avoid making necessary revisions on matters properly before it.

37.  The decision of the Board on substantive or jurisdictional issues constitutes final administrative

action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the Board's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875, 405.1877. The Secretary has delegated its authority under the statute to review the Board decisions to the CMS Administrator. *See* 42 C.F.R. §§ 405.1875, 405.1877. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the Board or the decision of the CMS Administrator after reviewing the Board's decision. *See* 42 C.F.R. § 405.1877(a)(2).

38.   A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. §1395oo(f)(1). The Secretary is the proper defendant in such an action. *See* 42 C.F.R. § 405.1877(a)(2). Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. §1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within thirty days of a "final determination."

39.   Judicial relief is also available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right. *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001); *Lutheran Med. Ctr. v. Thompson*, 520 F. Supp. 2d 414, 419 (E.D.N.Y. 2007).

40.   Jurisdiction is also available under 28 U.S.C. § 1331 where the agency renders a final determination and there is no administrative appeal available for that determination. *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

41.    Under 42 U.S.C. §1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "shall be tried pursuant to the applicable provisions under chapter 7 of title 5 of the U.S. Code, which contains the Administrative Procedure Act (APA). Under the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. §706(2)(A). Further, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. §706(2)(E).

## FACTS SPECIFIC TO THIS MATTER

42.    It is acknowledged by the PRRB that it received each of Plaintiffs' 195 Group Appeal Requests. The subject of *each* Plaintiffs' group appeal was described as: "Medicare Fraction (SSI) – Statutory & Systemic Errors-CIRP Group."

43.    By way of background, and on August 13, 2024, CMS published the Medicare Fraction data and SSI Ratio. The published spreadsheet identified thousands of individual hospitals' data. Each line identified a hospital by name, provider number, and listed its SSI patient days, Medicare patient days, and the resulting SSI Ratio.

44.    In each of its appeals, Plaintiffs contended that the Medicare Fractions published on CMS' website on August 13, 2024, pursuant to **CMS Transmittal 12785**, were determined incorrectly due to the "inclusion of Medicare Part C days in the denominator of the Fraction and... exclusion of days from the numerator of the Medicare Fraction associated with individuals who were entitled to Supplemental Security Income ("SSI") during their hospital stay but who were not in

SSI pay status during such days, or were in SSI pay status during their hospital stay but were not assigned payment status code C01, M01 or M02." (**Exh. A**., at pg. 1). The aforementioned Part C issue and the omission of numerous status codes were the issues before the Board and are now before this Court. As a result of the erroneously cited Medicare Fractions published by CMS and in particular, the resultant SSI ratio so listed, it was abundantly clear to each Plaintiff at the time of the publication that the subsequent calculation of each of its final DSH calculations to be issued by the MAC would be severely decreased in total value and would result in lower (or no) DSH payment adjustment to each Plaintiff hospital from CMS.

45.     In its Letter of Dismissal of all 195 cases (**Exhibit A**), the Board relied upon a rationale for dismissal of *each* appeal that the Medicare/SSI Fraction data published pursuant to **Transmittal 12785** is not an appropriately appealable "final determination", ant therefore each Plaintiff herein failed to meet the jurisdictional requirement for hearing of appeals before the Board.  Plaintiffs strenuously disagree with both the Board's rationale for its dismissals as well as each resulting dismissal and reflects the Board's arbitrary and capricious nature by its dismissal of each appeal and moreover such dismissals were in violation of section 1878(a)(1)(A)(ii) of the Medicare Act, specific promulgated rules and regulations of the PRRB, as well as relevant statutory and case law.

**a. The Issuance of Transmittal 12785 is an Appealable Final Determination**

46.     Plaintiffs allege that the issuance of Transmittal 23785 constitutes an appealable final decision and therefore, this Court has appropriate jurisdiction over the issues presented in this complaint because **Transmittal 23785**, which is controlling in the instant appeals, is invalid on its face and may not be applied to the calculation of Plaintiffs' DSH calculations.

47. CMS issued Transmittal 12747 (Change Request 13413) on July 26, 2024. That Transmittal was illegal and invalid on its face in that CMS is now illegally including Part C days in the denominator of the Medicare Fraction in processing requests for realignment. CMS's action is illegal because, in processing requests for realignment, it has no authority to change the substantive standards that were used in the original determination of the provider's DPP, and because it has no authority to place Part C days in the denominator of the Medicare Fraction retroactively.

48. CMS Transmittal 12747 was "rescinded and replaced" by **Transmittal 12785**, published on August 13, 2024. The policy announced in Transmittal 12747 was carried over into Transmittal 12785. **Transmittal 12785** states that all information in Transmittal 12747 "remains the same" in Transmittal 12785.

49. Inasmuch as the application of the provisions of **Transmittal 12785** cause prejudice to Plaintiffs in that it decreases the provider's DPP that has been calculated by the MAC by applying that Transmittal as instructed by CMS, the pursuance of an adjudication hearing before the Board Panel (following the provisions of that same Transmittal) becomes irrelevant and moot. Utilization of **Transmittal 12785** provided, with some finality, "advance knowledge of the amount of [the DSH] payment." *see, Battle Creek Health System, et. al., v. Becerra,* 2023 WL 7156125 (D.D.C. Oct. 31, 2023), *appeal docketed,* No. 23-5310 (D.C. Cir. December 29 2023); *Baylor All Saints Med. Ctr. Becerra,* 2024 WL 3833278 (N.D. Tex. Aug. 15, 2024), *appeal docketed,* No. 24-10934 (5th Cir. October 17, 2024), where the courts held that ***providers met the requirements for a Board appeal before receiving a final appealable determination as to the amount of the DSH payment.***

50.   Therefore, the Medicare/SSI Fraction data published pursuant to **Transmittal 12785** is an appropriately appealable final determination and hence, this Court has appropriate jurisdiction over the issues in this matter and each of its 195 group appeal dismissals must be overturned.

## COUNT I

51.   The applicable provisions of the Administrative Procedures Act provides that the "reviewing court shall... hold unlawful and set aside agency action... found to be (a) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; ... (c) in excess of statutory jurisdiction, authority, or limitation, or short of statutory right; (d) without observance of procedure required by law; or (e) unsupported by substantial evidence. 5 U.S.C. §706(2).

## COUNT II

52.   The Medicare Fraction data and SSI ratios published by Defendant on August 13, 2024 was arbitrary, capricious, and abuse of discretion and otherwise not in accordance with law including the violation of the provisions of sections of the Medicare Act. Moreover, such published Fractions on that date pursuant to CMS **Transmittal 12785** were determined erroneously due to the inclusion of Medicare Part C days in the denominator of the Fraction and exclusion of days from the numerator of the Medicare Fraction associated with individuals who were entitled to SSI during their hospital stay but who were not in SSI pay status during such stays, or were in SSI pay status during their hospital stay but were not assigned the appropriate payment status codes and hence were not counted in the fraction.

## COUNT III

53.   The Board erroneously concluded that its publication of the Medicare Fraction data and SSI ratios published on August 13, 2024 did not constitute a final determination by CMS whereas cited case law in *Battle Creek Health Sys., v. Becerra* and *Baylor All Saints Med. Ctr. v. Becerra*

find in opposite to that conclusion, and in fact held that such publication does constitute a final

determination upon which a provider such as Plaintiffs have the right to file an appeal based

upon its dissatisfaction with that formula.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Providers pray for an Order:

(a)    Reversing and setting aside the PRRB decision of dismissal of each of Plaintiffs' appeals;

(b)    Declaring invalid and enjoining application of **Transmittal 12785**;

(c)    Remanding each appeal back to the Board for full adjudication on the merits;

(d)    Awarding the costs of suit incurred by Plaintiffs;

(e)    Awarding Plaintiffs interest as required by 42 U.S.C. § 1395oo(f)(2); and,

(f)    For such other and further relief as the Court may deem just and proper under the circumstances.


DATED: July 17, 2025                                    Respectfully submitted,


                                                       /s/Alan J. Sedley

                                                       Alan J. Sedley, Esq. Bar# OH0017
                                                       ALAN J. SEDLEY LAW CORP.
                                                       18880 Douglas, Suite 417
                                                       Irvine, CA 92612
                                                       (818) 601-0098
                                                       asedley@sedleyhealthlaw.com

                                                       *Counsel for Plaintiffs*

COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION